IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TERRANCE G. JOHNSON, | § § | |
| Plaintiff, | § § | |
| v. | § § | No. 3-06CV0381-M |
| IDEXX LABORATORIES, INC., | § § | |
| Defendant. | § § § | |

**DEFENDANT IDEXX LABORATORIES, INC.'S BRIEF IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

Respectfully submitted,

Douglas D. Haloftis
Texas Bar No. 08804400
Michelle D. Chenault
Texas Bar No. 24042650

**GARDERE WYNNE SEWELL LLP**
1601 Elm Street
Suite 3000
Dallas, Texas 75201
(214) 999-3000
(214) 999-4667 (facsimile)

**ATTORNEYS FOR DEFENDANT
IDEXX LABORATORIES, INC.**

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ..................................................................................................1

II.    STATEMENT OF FACTS .......................................................................................2

III.   SUMMARY JUDGMENT STANDARD ..........................................................8

IV.    ARGUMENT AND AUTHORITIES.......................................................................9

     A.   Plaintiff's Claim That He Was Terminated in Retaliation for Filing an
          OSHA Complaint is Not Actionable.......................................................9

     B.   Plaintiff Cannot Adduce Any Evidence to Support His Claims Under Title
          VII and § 1981. ..................................................................................11

V.     CONCLUSION.....................................................................................................12

# TABLE OF AUTHORITIES

Page

## CASES

*Albertson v. T.J. Stevenson & Co.,*
   749 F.2d 223 (5th Cir. 1984) ........................................................................ 11

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986) ...................................................................................... 8

*Bank Leumi Le-Israel, B.M. v. Lee,*
   928 F.2d 232 (7th Cir. 1991) ........................................................................ 11

*Baton Rouge Oil & Chem. Workers Un. v. ExxonMobil Corp.,*
   289 F.3d 373 (5th Cir. 2002) ........................................................................ 8

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986) ...................................................................................... 8

*Donovan v. Oil, Chemical, Chemical, and Atomic Workers International Union,*
   718 F.2d 1341 (5th Cir. 1983) ...................................................................... 10

*Donovan v. Square D Co.,*
   709 F.2d 335 (5th Cir. 1983) ........................................................................ 10

*Fontenot v. Upjohn Co.,*
   780 F.2d 1190 (5th Cir. 1986) ...................................................................... 8

*George v. Aztec Rental Ctr., Inc.,*
   763 F.2d 184 (5th Cir. 1985) ........................................................................ 10

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
   475 U.S. 574 (1986) ...................................................................................... 8

*Rutherford v. Harris County,*
   197 F.3d 173 (5th Cir. 1999) ........................................................................ 11

*Story v. Montgomery Kone, Inc.,*
   2002 WL. 576037 (N.D. Tex. April 11, 2002) .............................................. 10

*Thurman v. Sears, Roebuck & Co.,*
   952 F.2d 128 (5th Cir. 1992) ........................................................................ 11

DALLAS 1762950v1

*Topalian v. Ehrman,*
        954 F.2d 1125 (5th Cir. 1992) ....................................................................................11, 12

## STATUTES

42 U.S.C. § 1981 .........................................................................................................................1

42 U.S.C. § 2000e, *et seq.* ..........................................................................................................1

29 U.S.C. § 660(c)(11)(c)(2)......................................................................................................10

29 U.S.C. § 660(c)(2)..................................................................................................................10

29 U.S.C. § 660(c) (West 2007) ...................................................................................................9

Fed. R. Civ. P. 56(c) .....................................................................................................................8

## OTHER CITATIONS

Pl.'s Am. Pet., ¶¶ 29-34...............................................................................................................9

DALLAS 1762950v1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TERRANCE G. JOHNSON, | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION |
| | § | No. 3-06CV0381-M |
| v. | § | |
| | § | |
| IDEXX LABORATORIES, INC., | § | |
| | § | |
| Defendant. | § | |

## DEFENDANT IDEXX LABORATORIES, INC.'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

According to Rule 56 of the Federal Rules of Civil Procedure, Defendant IDEXX Laboratories, Inc. ("Defendant" or "IDEXX") submits this Brief in Support of Defendant IDEXX Laboratories, Inc.'s motion for summary judgment seeking to dispose of Plaintiff Terrance G. Johnson's ("Plaintiff" or "Johnson") claims of retaliation under to Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. § 1981 and would demonstrate to the Court as follows:

## I.     INTRODUCTION

Terrance G. Johnson ("Johnson") worked for IDEXX Laboratories, Inc. ("IDEXX") for approximately five months in IDEXX's Dallas laboratory.   During the entirety of his employment, he was employed at-will and worked in an initial probationary-period.   During this period, Johnson engaged in insubordinate and harassing behavior towards his supervisors and other employees at IDEXX.   Johnson was given the opportunity to succeed and was issued a Corrective Action Warning by Anil Patel, his supervisor, detailing the ways in which he could improve his behavior.   Instead of taking these suggestions to heart, Johnson continued to perform

poorly, disrupt the other employees in the Dallas lab, and send offensive emails and letters to his supervisor. Finally, Johnson gave IDEXX no choice but to terminate his employment effective September 9, 2005, when he engaged in a verbal outburst with IDEXX's Workers' Compensation Case Manager, Holly Gilbert-Cleary.

Following the termination of his employment with IDEXX, Johnson filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging race, national origin, and religious discrimination and retaliation *and* a retaliatory discharge claim with the Occupational Safety and Health Administration ("OSHA"). Both agencies issued no cause findings, and Johnson filed the instant lawsuit. During his deposition, Johnson effectively waived his race, national origin, and religious discrimination claims and retaliation claim, stating unequivocally that his only claim against IDEXX was for retaliatory discharge after he made an OSHA complaint—a claim for which no private right of action exists. In fact, Johnson has focused solely on developing a claim that he has no standing to bring while concurrently abandoning his burden to adduce evidence regarding the claims that he has pleaded.

This motion seeks to dismiss Johnson's claims in their entirety based on Johnson's testimony, Johnson's complete inability to allege specific facts of discrimination or retaliation in violation of Title VII against IDEXX, and the fact that no private right of action exists allowing Johnson to pursue an OSHA retaliation claim.

## II.    STATEMENT OF FACTS[1]

Terrance G. Johnson began working for IDEXX Laboratories, Inc. on April 4, 2005.[2] Anil Patel, IDEXX's Third Shift Supervisor, hired Johnson as a lab technician in the Hematology

---

[1] The facts contained herein are derived solely from deposition testimony pertaining to this lawsuit and to previously authenticated documents.

[2] *See* Deposition of Terrance G. Johnson ("Johnson Depo."), App. A, p. 2 (p. 82, lns. 1-3).

department.[3]  For the entirety of his employment, Johnson was in the initial probationary period

during which IDEXX expressly stated that either the employee or IDEXX may part ways for any

reason.[4]  Almost immediately after he was hired, Johnson began detailing to his supervisor, Mr.

Patel, that he was not suited for the job he had been hired to perform.[5]  Rather, he explained, he

would be more valuable to IDEXX in the Chemistry department.[6]  Johnson made this request

repeatedly throughout his employment, to both Mr. Patel and to Matt Boehler, the Dallas Lab

Manager.[7]  Mr. Patel and Mr. Boehler repeatedly explained to Johnson that there were no

openings in the Chemistry department and that he would have to perform the functions of his job

for the time being.[8]  Johnson was unhappy at this prospect and continued to request a change to

the Chemistry department.[9]

In addition to constantly requesting this change to the Chemistry department, Johnson

had a very negative attitude towards IDEXX and the Company's policies and practices.[10]  In fact,

Johnson communicated his displeasure at how IDEXX was run on a regular basis through

lengthy and inappropriate emails and a letter to Mr. Patel and Mr. Boehler.[11]

---

[3] See Johnson Depo., App. A, p. 2 (p. 82, lns. 1-3).

[4] See Johnson Depo., App. A, p. 7 (p. 237, lns. 22-24).

[5] See Deposition of Anil Patel ("Patel Depo."), App. C, p. 44 (p. 68, lns. 22-25) and p. 45 (p. 69, lns. 1-4).

[6] See Patel Depo., App. C, p. 44 (p. 68, lns. 22-25) and p. 45 (p. 69, lns. 1-4).

[7] See Patel Depo., App. C, p. 44 (p. 68, lns. 22-25) and p. 45 (p. 69, lns. 1-4); see also Deposition of Matthew Boehler ("Boehler Depo."), App. E, p. 90 (p. 54, lns.24-25, p. 55, lns. 1-4) and p. 97 (p. 87, lns. 22-25, p. 88, lns. 1-10).

[8] See Patel Depo., App. C, p. 44 (p. 68, lns. 22-25) and p. 45 (p. 69, lns. 1-4); see also Boehler Depo., App. E, p. 90 (p. 54, lns. 24-25, p. 55, lns. 1-4) and p. 97 (p. 87, lns. 22-25, p. 88, lns. 1-10).

[9] See Patel Depo., App. C, p. 44 (p. 68, lns. 22-25) and p. 45 (p. 69, lns. 1-4); see also Boehler Depo., App. E, p. 90 (p. 54, lns. 24-25, p. 55, lns. 1-4) and p. 97 (p. 87, lns. 22-25, p. 88, lns. 1-10).

[10] See Boehler Depo., App. E, p. 91 (p. 58, lns. 11-25, p. 59, lns. 1-10) and p. 92 (p. 61, lns. 22-25, p. 62, lns. 1-4); Exhibits to Deposition of Matthew Boehler ("Boehler Depo. Exs."), App. F, p. 113-116; see also Exhibits to Deposition of Anil Patel ("Patel Depo. Exs."), App. D, p. 70-72, 77-79, 81-82.

[11] See Patel Depo. Exs., App. D, p. 70-72, 77-79, 81-82; see also Boehler Depo. Exs., App. F, p. 118-120; see also Exhibits to Deposition of Terrance G. Johnson ("Johnson Depo. Exs."), App. B, p. 21-33.

---

In addition to this inappropriate behavior, Johnson also acted insubordinately and nearly caused IDEXX to lose valuable customers when he made the unilateral and unauthorized decision to send fecal samples outside the lab to another IDEXX lab for testing.[12]

Before Johnson sent these fecal samples outside the lab for testing, he had raised the concern that the lack of the fume hood posed a health risk.[13]  A fume hood that was generally used when testing the fecal samples had not been working properly at the Dallas lab.[14]  But this fume hood was used to simply take some of the odors out of the air while lab technicians were working with the fecal samples, and Johnson was well aware that he was expected to perform these tests in-house.[15]  While in the process of getting the fume hood back in function for the comfort of the Dallas lab technicians, Mr. Boehler took it upon himself to research Johnson's concerns.[16]   Mr. Boehler reviewed the Occupational Safety and Health Administration ("OSHA") guidelines and contacted the IDEXX Regional Safety Expert for the Dallas lab's region.[17]  After reviewing the OSHA guidelines and the particulars of the Dallas lab, Mr. Boehler determined that running the required tests on the fecal samples without use of the fume hood did not pose any health risks to any IDEXX lab technicians.[18]

---

[12] *See* Boehler Depo., App. E, p. 86-89 (pp. 38-51).

[13] *See* Johnson Depo. Exs., App. B, p. 34-35.

[14] *See* Boehler Depo., App. E, p. 84 (p. 28, lns. 20-25) *and* p. 88 (p. 45, lns. 23-25, p. 46, lns. 1-7).

[15] *See* Boehler Depo., App. E, p. 84 (p. 28, lns. 20-25) *and* p. 88 (p. 45, lns. 23-25, p. 46, lns. 1-7) *and* p. 92 (p. 63, lns. 11-22) *and* p. 93 (p. 65, lns. 1-25, p. 66, lns. 1-3).

[16] *See* Boehler Depo., App. E, p. 85 (p. 29, lns. 2-25, p. 30, lns. 1-4).

[17] *See* Boehler Depo., App. E, p. 85 (p. 29, lns. 2-25, p. 30, lns. 1-4).

[18] *See* Boehler Depo., App. E, p. 85 (p. 29, lns. 2-25, p. 30, lns. 1-4).  In fact, not only did IDEXX's internal Regional Safety Expert determine that testing the fecal samples without use of the fume hood was safe for the Dallas lab technicians, but OSHA subsequently determined that the Dallas lab was not in violation of any OSHA guidelines during the time fecal samples were tested without use of the fume hood. *See* Boehler Depo, App. E, p. 98 (p. 91, lns. 2-19).

Even after learning that the improper functioning of the fume hood did not pose any health risks, Johnson proceeded to act insubordinately and sent out the fecal samples to another IDEXX lab for processing.[19]   Johnson made this decision unilaterally and in the face of instruction not to do so.[20]   In addition, this act by Johnson caused the fecal samples to fall short of their twenty-four hour turnaround deadline.[21]   Because of this, IDEXX almost lost a very important client contract.[22]

In light of Johnson's insubordinate behavior, Mr. Boehler and Mr. Patel determined that Johnson needed guidance to improve his performance at IDEXX and chose to give him a second chance in his employment.   Mr. Boehler and Mr. Patel worked with the IDEXX Human Resources Department to draft a Corrective Action Notice for Johnson.[23]   This Corrective Action Notice, presented to Johnson on August 31, 2005, detailed the inappropriate behaviors in which Johnson had been engaging through the previous four months and coached Johnson on ways in which he could improve his performance and behavior.[24]   The Corrective Action Notice also advised Johnson that if he did not improve his performance and behavior, his employment would be terminated.[25]

Johnson, however, did not work to improve his performance or his behavior.   In fact, the very day after he was counseled regarding his inappropriate behavior, he verbally accosted IDEXX's Worker's Compensation Case Manager, Holly Gilbert-Cleary.   In the afternoon of

---

[19] See Boehler Depo., App. E, p. 88 (p. 48, lns. 8-25) and p. 89 (p. 49, lns. 1-25, p. 50, lns. 1-25, p. 51, lns. 1-15).

[20] See Johnson Depo. Exs., App. B, p. 34-35 (email from Johnson recognizing that he was instructed not to send the fecal samples outside the lab for testing and unequivocally stating that he was the one who made the decision to send them out); see also Boehler Depo., App. E, pp. 86 (p. 38, lns. 12-14).

[21] See Boehler Depo., App. E, pp. 89 (p. 51, lns. 12-15).

[22] See Boehler Depo., App. E, pp. 89 (p. 51, lns. 12-15).

[23] See Patel Depo. Exs., App. D, p. 73-76.

[24] See Patel Depo. Exs., App. D, p. 73-76.

[25] See Patel Depo. Exs., App. D, p. 73-76.

September 1, 2005, Ms. Gilbert-Cleary contacted Johnson to set up an appointment to assist him in diagnosing and treating his mild carpal tunnel syndrome.[26]  IDEXX determined that such an appointment was necessary because Johnson had repeatedly told Mr. Patel and Mr. Boehler that he could not perform the functions of his job due to his alleged injury.[27]  Instead of working with Ms. Gilbert-Cleary in getting an appointment set so that IDEXX could be aware of any restrictions placed on him, Johnson proceeded to verbally accost Ms. Gilbert-Cleary. Throughout the duration of the phone call, Johnson yelled at Ms. Gilbert-Cleary, accusing her of being part of the IDEXX "bureaucracy" and ultimately threatening her.[28]  At the end of the conversation, Johnson told Ms. Gilbert-Cleary that he would go see a doctor whenever he felt like it and hung up the phone on her.[29]  Ms. Gilbert-Cleary was upset and very shaken by this verbal outburst.[30]

Following this verbal outburst, and in light of the Corrective Action Notice that had been issued to him only one day prior, IDEXX chose to terminate Johnson's employment, effective September 9, 2005.[31]  Mr. Boehler wrote Johnson a memorandum regarding his employment termination and stating specific examples of issues instigated by Johnson during his short tenure at IDEXX.[32]  Those examples included not only Johnson's most recent inappropriate verbal

---

[26] *See* Deposition of Holly Gilbert-Cleary ("Gilbert-Cleary Depo."), App. G, p. 123 (p. 60, lns. 18-20).

[27] *See* Gilbert-Cleary Depo., App. G, p. 122 (p. 52, lns. 14-25, p. 53, lns. 1-18).

[28] *See* Gilbert-Cleary Depo., App. G, p. 123 (p. 60, lns. 21-25, p. 61, lns. 1-25) *and* p. 102 (p. 62, lns. 1-25, p. 63, lns. 1-5).

[29] *See* Gilbert-Cleary Depo., App. G, p. 124 (p. 62, lns. 18-21).

[30] *See* Gilbert-Cleary Depo., App. G, p. 125 (p. 70, lns. 21-25, p. 71, lns. 1-18).

[31] *See* Boehler Depo. Exs., App. F, p. 112.  In addition, it is important to note that Johnson was terminated while still in his introductory period where IDEXX reserves the express right to terminate the employment relationship for any reason.  *See* Johnson Depo., App. A, p. 7 (p. 237, lns. 22-24); *see also* Boehler Depo., App. E, p. 108 (p. 136, lns. 16-19).

[32] *See* Boehler Depo. Exs., App. F, p. 112.  For further testimony regarding the reasoning behind Johnson's termination, *see generally* Patel Depo., App. C, p. 48-68 *and* Boehler Depo., App. E, p. 94-96, 99-107.

outburst but also his openly critical and unconstructive attitude towards IDEXX policies and practices and an offensive and inappropriate letter Johnson wrote to Mr. Patel.[33]

After Johnson's employment was terminated, he brought a Charge of Discrimination before the Equal Employment Opportunity Commission ("EEOC") against IDEXX, alleging discrimination on the basis of his race, national origin, and religion. The EEOC issued a no cause finding as to Johnson allegations, granting him a right to sue letter regarding these claims arising under Title VII.[34]

Johnson also instituted an OSHA retaliatory discharge claim against IDEXX, alleging that his employment had been terminated in retaliation for his making an OSHA complaint. No IDEXX employee was aware that Johnson had called OSHA regarding a possible violation until after the decision to terminate Johnson had been made.[35] Both the OSHA investigator and the Department of Labor found that IDEXX was not liable to Johnson for any retaliation based on the complaint he made to OSHA.[36] Johnson is currently seeking an appeal of OSHA's no-cause finding.

---

[33] This letter was Johnson's angry response to a conversation he had with Mr. Patel in which Johnson expressed his dissatisfaction with IDEXX. Mr. Patel had replied to Johnson that, as is obviously inevitable in any large organization, IDEXX might have characteristics that Mr. Johnson did not like. *See* Patel Depo. Exs., App. D, p. 78-80. Johnson's reaction to that conversation was the angry letter to Mr. Patel. In it, Johnson compared IDEXX to the "Nazi Party" acting "largely for their own personal gam [sic] and because it was just the way things were." The letter went on to personally attack Mr. Patel and his religion, quoting passages from the Bible and King Solomon. *See* Patel Depo. Exs., App. D, p. 78-80.

[34] *See* Johnson Depo. Exs., App. B, p. 42.

[35] *See* Boehler Depo., App. E, p. 98 (p. 90, lns. 20-23); *see also* Patel Depo. Exs., App. D, p. 70-72 (note the time of the email as 11:29 a.m.) *and cf.* Patel Depo. Exs., App. D, p. 80 (note the time of the email where Johnson notified IDEXX that he had filed an OSHA complaint as 1:11 p.m.).

[36] Although Johnson has the opportunity to present all relevant evidence to OSHA and the DOL and although IDEXX cooperated at each and every juncture of the OSHA and DOL investigation, Johnson was not satisfied that OSHA performed its role properly. *See* Johnson Depo. Exs., App. B, p. 37-41. In fact, in his deposition, Johnson compares OSHA to the Federal Emergency Management Agency ("FEMA") stating "I see OSHA to this incident is a little bit like FEMA to Katrina." Johnson Depo., App. A, p. 3 (p. 219, lns. 17-18) *and* p. 4 (p. 224, lns. 18-21). It is clear that Johnson chose to file this lawsuit against IDEXX simply because he could not obtain the relief he desires from OSHA.

---

Following the no-cause finding issued by the EEOC, Johnson instituted this lawsuit, asserting claims of race, national origin, and religious discrimination and retaliation. During the course of discovery, IDEXX took Johnson's deposition. When asked in his deposition what he believed was the true motive for his termination, Johnson testified that it was based solely on his complaint to OSHA.[37] In fact, Johnson was unequivocal in his testimony that he believed he was terminated in retaliation for making an OSHA complaint, stating that he had "no doubt, 100 percent, that's it."[38] Throughout the litigation of this lawsuit, Johnson has repeatedly tried to adduce evidence to support a cause of action that he has not and cannot plead, while simultaneously abandoning the claims that he has standing to plead.

## III.    SUMMARY JUDGMENT STANDARD

Summary judgment is a vital procedural tool used to weed out untenable causes of action and to preserve for trial only genuine issues of material fact.[39] Summary judgment is appropriate when the record shows that no genuine dispute exists about any material fact and that the moving party is entitled to judgment as a matter of law.[40] When a motion for summary judgment is supported by proper evidence, judgment for the movant is appropriate unless the non-movant's response sets forth specific facts showing that there is a genuine issue for trial.[41] Here, Johnson's own admissions require that the proceedings be brought to an end; trial would be a futile exercise fated to an inevitable result.

---

[37] *See* Johnson Depo., App. A, p. 18 (p. 247, lns. 2-6) *and* p. 13 (p. 226, lns. 4-25, p. 227, lns. 1-12).

[38] *See* Johnson Depo., App. A, p. 18 (p. 247, lns. 2-6) *and* p. 13 (p. 226, lns. 4-25, p. 227, lns. 1-12).

[39] Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).

[40] Fed. R. Civ. P. 56(c); *Baton Rouge Oil & Chem. Workers Un. v. ExxonMobil Corp.*, 289 F.3d 373, 375 (5th Cir. 2002); *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

[41] Fed. R. Civ. P. 56(e).

## IV.  ARGUMENT AND AUTHORITIES

In Johnson's Amended Complaint, he alleges race, national origin, and religious discrimination and retaliation in violation of Title VII.[42] But Johnson asserts in his deposition that the sole reason his employment was terminated was retaliation for his complaint to OSHA.[43] Johnson's contention is fatal because there is no private right of action for such retaliation. Standing to assert such a claim rests solely with the government.

### A.  Plaintiff's Claim That He Was Terminated in Retaliation for Filing an OSHA Complaint is Not Actionable.

Throughout the litigation of this matter, Johnson has had ample opportunity to allege facts which support his claims of race, national origin, and religious discrimination and retaliation as asserted in his Amended Complaint.  He has completely failed to do so.  During his deposition, Johnson swore as to the reasons for which he believed he was terminated.  When IDEXX counsel asked Johnson if there were  "any other reasons you believe you were terminated, other than the fact that you made this complaint to OSHA,"[44] Johnson unequivocally replied "[n]o.  I – I know that that – it was all about the hood and the safety issue and letting OSHA know about it and standing up against it for being unsafe.  That's why I got fired.  I have no doubt, 100 percent, that's it."[45]  Johnson unequivocally contends that IDEXX violated section 11(c) of the Occupational Safety and Health Administration Act[46] in that his termination was in retaliation for his having made complaints to OSHA about allegedly dangerous conditions at the Dallas lab.  Moreover, Johnson makes it further clear that he lodges no other claims against

---

[42] *See* Pl.'s Am. Pet., ¶¶ 29-34.

[43] *See* Johnson Depo., App. A, p. 18 (p. 246, lns. 24-25, p. 247, lns. 1-6), *and* p. 13 (p. 226, lns. 4-25, p. 227, lns. 1-12).

[44] *See* Johnson Depo., App. A, p. 18 (p. 246, lns. 24-25, p. 247, ln. 1).

[45] *See* Johnson Depo., App. A, p. 18 (p. 247, lns. 2-6); *and* p. 13 (p. 226, lns. 4-25, p. 227, lns. 1-12).

[46] 29 U.S.C. § 660(c) (West 2007).

IDEXX.[47]   As such, IDEXX takes Johnson at his word regarding the true nature of his allegations against the Company.

Section 11(c) of the OSHA Act prohibits retaliatory discharge or discrimination against a person who has filed a complaint with OSHA or institutes proceedings under the OSHA Act.  If any person feels as though they have been retaliatorily terminated or discriminated against in violation of section 11(c), that person is entitled to file a complaint with the Secretary of Labor alleging the violation.  Section 11(c)(2) specifically states that "[u]pon receipt of such complaint, the Secretary shall cause such investigation to be made as he deems appropriate.  If upon investigation, the Secretary determines that the provisions of [29 U.S.C. § 660(c)(11)(c)] have been violated, *he shall bring an action in any appropriate United States district court against such person.*"[48]

The Fifth Circuit has repeatedly held that "there is no private cause of action under federal law for a private employer's retaliatory discharge of an employee contrary to section 11(c) [of the OSHA statute]."[49]   Rather, only the Secretary of Labor may bring an action pursuant to section 11(c).[50]   The Secretary of Labor has initially declined to bring an enforcement action in Johnson's case.

Moreover, Johnson cannot assert any evidence, such as an affidavit, which directly contradicts his unequivocal deposition testimony that his sole claim against IDEXX arises under

---

[47] *See* Johnson Depo., App. A, p. 18 (p. 247, lns. 2-6).

[48] 29 U.S.C. § 660(c)(11)(c)(2).

[49] *See, e.g., George v. Aztec Rental Ctr., Inc.,* 763 F.2d 184, 186 (5th Cir. 1985); *see also Donovan v. Square D Co.,* 709 F.2d 335, 338-39 (5th Cir. 1983); *Donovan v. Oil, Chemical, Chemical, and Atomic Workers International Union,* 718 F.2d 1341, 1348, fn. 27 (5th Cir. 1983).

[50] *See* 29 U.S.C. § 660(c)(2); *see also George,* 763 F.2d at 186-87; *see also Story v. Montgomery Kone, Inc.,* 2002 WL 576037, *3 (N.D. Tex. April 11, 2002) (not reported in F.Supp.2d).

section 11(c) of the OSHA Act.[51]  Courts refuse to consider such "sham" evidence, finding that these late, contradictory evidentiary assertions are mere self-serving attempts by the plaintiff to survive summary judgment.[52]

For these reasons, this lawsuit should be dismissed with prejudice based on the fact that there is no private right of action afforded Johnson, who has testified that the sole allegation he brings against IDEXX is retaliatory termination for making an OSHA complaint.

B.  **Plaintiff Cannot Adduce Any Evidence to Support His Claims Under Title VII and § 1981.**

Johnson is so fervent in his belief that his employment was terminated based solely on the complaint he made to OSHA that he ostensibly has abandoned his burden to present proof of the *prima facie* elements of his claims under Title VII and § 1981.  Johnson has adduced no evidence to support a *prima facie* claim of race, national origin, or religious discrimination or retaliation.  Specifically, regarding these claims, Johnson has no evidence that any other IDEXX employee outside of his protected class received preferential treatment.[53]  Likewise, regarding his retaliation claim, Johnson has no evidence that he engaged in any activity protected *by Title VII*.[54]  Consequently, Johnson's claims must fail because he cannot meet his burden of proof regarding his *prima facie* claims.

---

[51] *See Albertson v. T.J. Stevenson & Co.*, 749 F.2d 223, 228 (5th Cir. 1984) (holding that "a non-movant cannot defeat a motion for summary judgment by submitting an affidavit which directly contradicts, without explanation, his previous testimony"); *Thurman v. Sears, Roebuck & Co.*, 952 F.2d 128, 137, fn. 23 (5th Cir. 1992) (citing *Bank Leumi Le-Israel, B.M. v. Lee*, 928 F.2d 232, 236-37 (7th Cir. 1991)).

[52] *See Thurman*, 952 F.2d at 137, fn. 23.

[53] *See, e.g., Rutherford v. Harris County*, 197 F.3d 173, 179-80 (5th Cir. 1999).

[54] *See, e.g., Topalian v. Ehrman*, 954 F.2d 1125, 1130 (5th Cir. 1992).  Not only does Johnson fail to adduce evidence that he engaged in any Title VII protected activity, he also fails to adduce evidence that either of his supervisors at IDEXX was aware that he made an OSHA complaint before the decision to terminate his employment was made.  Although an OSHA complaint is not considered "protected activity" under Title VII, this fact further illustrates that IDEXX did not retaliatorily terminate Johnson's employment for any reason.

Not only does Johnson completely fail to prove a *prima facie* case of either discrimination or retaliation, he cannot prove that IDEXX's legitimate, non-discriminatory reasons proffered for his termination are pretextual.[55] IDEXX terminated Johnson based on his insubordinate and inappropriate behavior, as stated in the Corrective Action Notice issued to him no September 7, 2005.[56] Johnson has developed no evidence that these reasons were untrue; he simply expresses disagreement with them. Nor has Johnson identified any evidence of a direct or inferential discriminatory or retaliatory motive on IDEXX's behalf.[57]

Accordingly, this lawsuit should be dismissed with prejudice based on the fact that Johnson has failed to meet his burden of proof with regard to the *prima facie* claims he makes under Title VII and § 1981 nor can he rebut IDEXX's proffered legitimate, non-discriminatory reason for his termination.

## V.    CONCLUSION

By Johnson's own admission, the only claim he brings against IDEXX is a retaliatory discharge claim pursuant to section 11(c) of the OSHA Act. Yet, Johnson's claim against IDEXX is fatally flawed because no private right of action is recognized regarding alleged violations of section 11(c). Therefore, IDEXX respectfully requests that the Court grant its motion for summary judgment and dismiss Johnson's claims with prejudice.

---

[55] *See, e.g., Topalian*, 954 F.2d at 1130 (holding that mere conclusory allegations are not competent summary judgment evidence and are insufficient to defeat a motion for summary judgment).

[56] *See* Boehler Depo. Exs., App. F, p. 112.

[57] *See* Johnson Depo., App. A, p. 13 (p. 227, lns. 20-25, p. 228, lns. 1-25) *and* p. 14 (p. 229, lns. 1-25, p. 230, lns. 1-9).

Respectfully submitted,


/s/ Douglas D. Haloftis
Douglas D. Haloftis
Texas State Bar No. 08804400
Michelle D. Chenault
Texas State Bar No. 24042650
GARDERE WYNNE SEWELL LLP
1601 Elm Street
Suite 3000
Dallas, Texas 75201
(214) 999-3000
(214) 999-4667 (facsimile)

**ATTORNEYS FOR DEFENDANT
IDEXX LABORATORIES, INC.**


## CERTIFICATE OF SERVICE

Pursuant to ECF Rules, this document shall be electronically served to all counsel of record in this matter via the Notice of Electronic Filing automatically generated by the ECF system:

Timothy M. Kolman
Rufus A. Jennings
Timothy M. Kolman and Associates
225 N. Flowers Mill Road
Langhorne, PA  19047

Coleman Jackson
740 East Campbell Road
Suite 900
Richardson, Texas 75081


/s/ Douglas D. Haloftis